70920. ADAMS REFRIGERATED EXPRESS, INC. v. INGOL.
(336 SE2d 289)

DEEN, Presiding Judge.

On September 14, 1981, the appellee, Gerald Ingol, as an owner/operator of a tractor truck, entered an agreement with the appellant, Adams Refrigerated Express, Inc. (Adams), as an interstate motor carrier for hire. Under that agreement, Ingol contracted to haul

freight for Adams. In late September 1981, as Ingol was transporting a load through Alabama, Ingol's truck broke down; under circumstances now disputed by the parties, the truck was towed to Adams' premises in Atlanta, Georgia, where allegedly over $8,100 in repairs on the truck's engine were undertaken by Adams.

Adams refused to relinquish Ingol's truck until Ingol paid the repair costs. Ingol consequently commenced this action in trover against Adams, electing at trial, at the close of the evidence, to pursue a verdict for return of the truck and its hire. From the jury's return of a verdict for Ingol, awarding him the truck and $130,000 for its hire, and the trial court's subsequent denial of Adams' motions for judgment notwithstanding the verdict and for new trial, this appeal followed. *Held*:

1. Adams contends that the trial court erred either in not granting a new trial or in denying his motions for directed verdict and for judgment notwithstanding the verdict, on the grounds that there was no evidence of the market and rental values of the truck.

"Ordinarily, a jury is authorized to make a finding as to market value based on the purchase price, the recentness of the purchase, the care given between the purchase and the loss, etc. [cit.]; however, such principle applies only where there has been no more than ordinary or average wear and tear on the automobile. Purchase price standing alone is not sufficient to establish market value. *Collins & Glennville R. Co. v. Beasley,* 36 Ga. App. 241, 243 (136 SE 167)." *National Auto. Ins. Co. v. Vaughn,* 98 Ga. App. 446, 447 (106 SE2d 87) (1958); *Hayes v. Flaum,* 138 Ga. App. 787 (227 SE2d 512) (1976). In the instant case, the only evidence of the market value of Ingol's truck was his testimony about the purchase price of $19,000 some fourteen months before the breakdown, and the purchase price of several accessory items he bought for the truck. This evidence probably did not constitute a sufficient basis for a jury to determine the market value of the truck at the time of the alleged conversion or afterwards. However, this evidentiary deficit became moot by Ingol's election to seek a verdict for the return of the truck along with the value of its hire, pursuant to OCGA § 44-12-151 (3). See also *Wilson-Weesner-Wilkinson Co. v. Collier,* 62 Ga. App. 457 (2) (8 SE2d 171) (1940).

All of the evidence of the value of the hire of the truck adduced in this case actually focused on the generation of revenue by use of the truck. In addition to Ingol's testimony about his average net revenue from hauling freight with the truck, the former president of Adams indicated that an owner/operator such as Ingol could gross from $1,900 to $3,500 per week. There was no evidence of the actual rental or lease cost of a similar truck.

The instant case thus presents the issue of defining the value of the hire of revenue-generating property such as Ingol's truck. Ingol

contended that the hire value of the truck should be measured by the revenue it generated, notwithstanding the fact that that revenue derived from a combination of the hire of the chattel and the hire of the driver. Adams contended that the hire value was simply rental value, or at least the net, rather than gross, revenue derived from use of the truck.

It does not appear that the Supreme Court or this court has clearly addressed this issue of hire value of property or equipment specifically used to earn income. Generally, the term "hire" has been synonymous with the term "rental value." See *Norred v. Dispain*, 119 Ga. App. 29 (166 SE2d 38) (1969) (automobile); *McLaurin v. Henry*, 90 Ga. App. 864 (84 SE2d 713) (1954) (airplane); *Wilson-Weesner-Wilkinson Co. v. Collier*, supra (gasoline shovel). There is some authority that evidence of the capability for producing income, while not conclusive, can be considered in determining the rental value. See *McCaulla v. Murphy*, 86 Ga. 475 (12 SE 655) (1890) (saw mill). Where property or equipment acquires a particular capability of producing income because of a specific use, arguably its hire value could be measured by its income production. However, we conclude that in a trover action concerning revenue-generating, non-unique personalty, where the plaintiff elects to seek return of the property and its hire, hire value must be the reasonable rental value of the property, and not its capability for revenue generation. Accordingly, because there was insufficient evidence of the rental value to support the jury's verdict for the hire of the truck in this case, a new trial is required. Reversal of the denial of Adams' motion for directed verdict is inappropriate because of the previous lack of clear definition of hire value of revenue-generating property such as Ingol's truck.

2. We have reviewed the appellant's remaining enumerations of error and have found no reversible error.

*Judgment reversed and case remanded for new trial. Pope and Beasley, JJ., concur.*

DECIDED OCTOBER 3, 1985 —
REHEARING DENIED OCTOBER 17, 1985 — 

*Irwin W. Stolz, Jr., Seaton D. Purdom*, for appellant.
*Joseph R. Baker, Lillian L. Neal*, for appellee.