### 75128. MESSMORE et al. v. ROTH.
#### (366 SE2d 318)

SOGNIER, Judge.

Lynette Roth brought suit against Jasper and Janet Messmore seeking recovery of actual and punitive damages for the Messmores' alleged conversion of household goods left by Roth in the Messmore home. The Messmores answered and counterclaimed for sums owed by Roth under a lease agreement, as well as for other sums. The case was tried before a jury, which returned a verdict in favor of Roth on the main claim in the amount of $11,667, and in favor of the Messmores on their counterclaim in the amount of $500. Judgment was entered on the verdict, and following denial of their motions for judgment n.o.v. or, alternatively, for a new trial, the Messmores appeal.

The record reveals that appellee, who had known appellant Janet Messmore in Wisconsin, arranged with appellants upon moving 'o 'he Atlanta area to share their home and pay them a fixed sum for rent and a contribution to other household expenses. Appellee moved her furniture and other personal belongings into the house, and subsequently purchased other household items. These were left by appellee in the house when, after a return visit to Wisconsin in the company of appellant Janet Messmore, appellee decided not to return to Atlanta. Although appellee eventually reclaimed a portion of her belongings, she claimed some of the personal property was either damaged or retained by appellants, despite appellee's attempts at retrieval.

1. Appellants contend the trial court erred by permitting appellee to prove the value of her personal property solely through evidence of purchase price. An opinion of value based on purchase price alone is insufficient and has no probative value. See, e.g., *Adams Refrigerated Express v. Ingol,* 176 Ga. App. 457, 458 (1) (336 SE2d 289) (1985). However, in the case sub judice appellee also testified to the date of purchase new and the condition of the property immediately prior to its loss or destruction. This provided a sufficient basis from which the jury could determine the value of the property. *Braner v. Southern Trust Ins. Co.,* 255 Ga. 117, 120-121 (3) (335 SE2d 547) (1985). Accordingly, the trial court did not err by permitting appellee to prove the value of her property in this manner.

2. Appellants maintain that because they asserted several claims against appellee, their retention of appellee's property was rightful under a common law possessory lien and thus the trial court erred both by failing to grant their motion for a directed verdict on this issue, and by charging the jury concerning tortious deprivation of

property.

Historically, common law liens were either particular or general. Particular liens arose in certain trades and businesses which were compelled to accept employment from the general public and thus ran the risk of not being paid for their services. Thus innkeepers and common carriers, for instance, if not paid for their services, could retain their customers' belongings. Particular liens attached only to the property involved in the transaction. General liens were created only by express agreement or by custom and usage in certain businesses and professions, such as attorneys, bankers, factors, and insurance brokers. The general lien extended not only to the property involved in the transaction, but to all property of the client or customer, for the satisfaction of an account.

Contrary to appellants' argument, *Kollock v. Jackson*, 5 Ga. 153 (1848), which dealt with a factor's lien on cotton, and *W. C. Caye & Co. v. Milledgeville Banking Co.*, 91 Ga. App. 664 (86 SE2d 717) (1955), concerning a bank's right to set-off monies owed it by a depositor before paying out the depositor's funds in a garnishment action, are distinguishable because both *Kollock* and *Caye* involved factual situations in which general liens had been well recognized at common law. We have found no case in which a common law lien attached in a situation such as that created by the facts here. Even assuming a portion of appellants' claim against appellee was for rent, a landlord's right to distrain for rent must be exercised through the use of legal process rather than by simple retention of the tenant's household goods. See OCGA § 44-7-70 et seq. We thus conclude that appellants had no common law lien giving them a right to retain appellee's property. Since appellants had no common law possessory lien, the trial court did not err by failing to grant appellants' motion for a directed verdict on this issue or by charging the jury regarding tortious deprivation of property.

3. Having held in Division 2 that appellants had no common law possessory lien, we find no merit in appellants' enumeration alleging error in the trial court's denial of their motion for a directed verdict as to the issue of punitive damages and find the trial court properly submitted to the jury the issue of whether appellants' retention of appellee's property was such as to warrant the award of additional damages.

4. Appellants assert the trial court erred by excluding testimony from appellee's former employer, which was offered by appellants to impeach appellee through evidence of general bad character. "[A]ny witness, other than an accused, may be discredited by evidence of bad character (OCGA § 24-9-84 . . . ) . . . [Cit.]" *Beasley v. State*, 168 Ga. App. 255, 256 (308 SE2d 560) (1983). This applies in civil, as well as in criminal cases. See, e.g., *Ballenger Corp. v. Dresco &c. Contrac-*

*tors,* 156 Ga. App. 425, 437-438 (4) (274 SE2d 786) (1980). Contrary to appellee's argument, *Housing Auth. of Atlanta v. Green,* 169 Ga. App. 211 (312 SE2d 196) (1983), does not dictate a different result. That case stated the rule in Georgia with regard to the admissibility of evidence of general *good* character, which is that the same is not admissible in civil cases except "where a party's character is a material issue under the pleadings in the case, [cit.], or where a party is accused of threatening to commit a crime. [Cit.]" Id. at 212. This is a restatement of the principle embodied in OCGA § 24-2-2, that "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."

However, the Georgia Code also provides that "[a] witness may be impeached by evidence as to his general bad character." OCGA § 24-9-84. "The impeaching witness should first be questioned as to his knowledge of the general character of the witness, next as to what that character is, and lastly he may be asked if from that character he would believe him on his oath." OCGA § 24-9-84. It is permissible to impeach through testimony of bad character by one who is familiar with the witness' reputation in the workplace. See *Bennett v. George,* 105 Ga. App. 527, 533-534 (12) (125 SE2d 122) (1962).

In the case at bar, the proper foundation was laid by appellants' counsel for the introduction of such impeaching testimony from Gloria Lester, the proprietor of a beauty shop and appellee's former employer. Lester was asked whether she was acquainted with appellee's general character and reputation in the community; she replied that she was, through her hairdressers, and that appellee's reputation was "not good." Appellee objected, and since the proper foundation had been laid, the trial court erroneously refused to allow appellants' counsel to continue questioning Lester along this line, and later instructed the jury to disregard her testimony. The credibility of appellee was important to the jury's resolution of conflicts in the testimony, both as to the main claim and the counterclaim, and we cannot say that appellants were not harmed by the trial court's improper exclusion of this testimony. We must, therefore, reverse the judgment, and remand this case for a new trial.

5. Other errors alleged in appellants' remaining enumerations of error, if harmful, are unlikely to recur upon retrial.

*Judgment reversed. McMurray, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

In Division 1 the majority rules that the evidence was sufficient for the jury to measure damages, in that purchase price when comple-

mented by age of the personal property and its condition when lost to plaintiff would provide an adequate basis for a determination of its fair market value. With that I agree. *Hoard v. Wiley*, 113 Ga. App. 328, 334 (147 SE2d 782) (1966); *Cunningham v. Hodges*, 150 Ga. App. 827 (1) (258 SE2d 631) (1979), and cases cited. "Ordinarily the measure of damages where property has been converted is its market value at the time of the conversion." *Park v. Swann*, 20 Ga. App. 39 (3) (92 SE 398) (1917); *Cooper v. Citizens Bank of Gainesville*, 129 Ga. App. 261, 262 (3) (199 SE2d 369) (1973).

Appellants complain not only of the type of evidence, however, but also of the jury charge on this point, as they did repeatedly at trial. That is not ruled on here, although it is enumerated as error, and a ruling is called for as the case is reversed for retrial. OCGA § 5-6-34 (c).

The court gave the charge on measure of damages requested by plaintiff: "in dealing with common personal property, and that is things like clothing, household goods, et cetera, a jury shall be able to assess the actual cash value of the property when the witness or homeowner testifies to the purchase price or replacement cost of the property and its purchase date or date of acquisition."

This was the only charge given on the subject of measurement of these damages. The charge recites the rule of evidence established in *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 121 (3) (335 SE2d 547) (1985) relating to proof of loss under an insurance police covering actual cash value, where the insurer complained that the insured proved only replacement cost. The Supreme Court fashioned a rule for homeowner fire loss cases involving destruction of personal property, departing from the general rule as to what is required as proof of damages to such personal property. It explained the variation as necessitated by practicalities. The rule, however, does not establish the measure of damages, only the type of proof acceptable. The contract established the measure.

This is not an insurance case, where the insurer defendant can (as done in *Braner*) use a depreciation formula to reduce the evidence of replacement cost to actual cash value, the ultimate measurement question in such cases. It is not even a contract case, but one where the plaintiff alleged the tort of conversion. Nor is it a case involving total destruction of the property and proof of its value. Finally, it is not one involving a long parade of small personal items the individual condition of which at time of loss would take an inordinate amount of testimony peripheral to the main issue, that of establishing loss. These are the practicalities which prompted the Supreme Court's relaxation of the proof rule in a circumscribed class of cases.

The charge instructed the jury to set the damage at "actual cash value," whereas the true measure is the fair market value. See *Jones*

*v. Spindel*, 128 Ga. App. 88, 93 (2) (a) (196 SE2d 22) (1973); 122 Ga. App. 390, 393 (6) (177 SE2d 187) (1970). See generally Cobb & Eldridge, Ga. Law of Damages (2d ed.), §§ 36-30; 31A-1; 31A-2.

Secondly, it does not instruct *when* the measurement is to be applied, i.e., at the time of conversion because plaintiff did not seek, nor was there any evidence of, a higher value between conversion and trial, which would have allowed the latter. OCGA § 44-12-152.

Nor is there any basis for assessing depreciation in this case via testimony in lieu of condition of the property, as in the insurance case, or any instruction concerning the necessity of considering the condition of the property at purchase and at conversion.

The proper charge would be the general rule as referred to in *Braner*. It, rather than the special *Braner* evidentiary rule, should be given on retrial so that the jury may determine the recoverable damages as provided by law.

DECIDED FEBRUARY 2, 1988 —
REHEARING DENIED FEBRUARY 18, 1988 — 

*C. James Jessee, Jr.*, for appellants.
*Michael E. McLaughlin*, for appellee.