[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14314
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cv-00109-LGW-JEG

JESUS ROBLES,

Plaintiff-Appellant,

versus

DIRECTOR THOMAS R. KANE,
Federal Bureau of Prisons; in his official capacity,

Defendant,

WARDEN,
The GEO Group, D. Ray James Correctional
Facility; in his official capacity,
PHILIP CHILDS,
TAMERA CREWS,
MS. FUENTES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(December 19, 2013)

Before CARNES, Chief Judge, PRYOR and MARCUS, Circuit Judges.

PER CURIAM:

Jesus Robles, a federal prisoner proceeding pro se, appeals the district court's dismissal of his Bivens suit.[1]

I.

This case arises from a dispute over legal mail sent to Robles while he was serving his federal prison sentence at the D. Ray James Correctional Facility (the Facility) in Folkston, Georgia.[2]  In December 2009 Robles was tried and convicted in the United States District Court for the District of Kansas of conspiracy to possess, and possession of, marijuana with the intent to distribute.  See United States v. Robles, 434 F. App'x 736, 736–39 (10th Cir. 2011).  Robles was sentenced to 64 months imprisonment and transferred to the Facility, which is a privately owned prison that operates under a contract with the Bureau of Prisons (BOP).  Its employees work for The GEO Group, Inc., not the federal government.

_____

[1] See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999 (1971).

[2] Because the district court granted the defendants' motion to dismiss, we take the facts as alleged in Robles' complaint.  See Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1291 (11th Cir. 2007).

2

In May 2010 Robles appealed his convictions to the Tenth Circuit.  While his appeal was pending, officials at the Facility interfered with his receipt of five pieces of legal mail.  In 2011 the Facility received legal mail addressed to Robles that was postmarked January 25, January 28, February 2, February 28, and March 8.  Yet Robles did not promptly receive that mail once the prison's mailroom processed it.  After he made "many inquiries" and "mention[ed] an investigation by Federal authorities," he received three of those pieces of mail on March 24, 2011, and a fourth piece on March 25, 2011.  He never received the transcripts that were included with the January 28 letter,[3] and the February 28 letter had been opened outside his presence.  The exhibits Robles attached to his complaint show that the January 28 letter included transcripts of his trial and sentencing, and the February 28 letter contained those same transcripts along with copies of the previous letters he had not received.[4]  The Facility officials running the mailroom did not tell Robles why his mail had been delayed or where it had been.

While Robles was attempting to secure his mail, his direct appeal was pending in the Tenth Circuit.  The docket for that appeal shows that the transcripts of Robles' trial and sentencing hearing were available electronically on the Tenth

---

[3] Robles' exhibits include a letter from his attorney dated January 28, on which Robles has written "missing."  The letter says that the attorney had enclosed copies of his trial and sentencing transcripts.  We thus infer that what is "missing" is the records that were included with the letter.

[4] The exhibits do not reveal the contents of the other three letters.

3

Circuit's case management system on November 24, 2010.  See United States v. Robles, No. 10-3119 (10th Cir. Nov. 24, 2010) (filing record on appeal).  The public defender representing Robles on appeal moved for and received several extensions on the deadline to file a merits brief — until the Tenth Circuit set a final deadline of March 4, 2013.  The motions indicate that his attorney asked for the extensions based on the length of the record and the demands of her caseload, not because of any difficulty communicating with Robles.  See, e.g., Robles, No. 10-3119 (10th Cir. Jan. 25, 2011) (moving for an extension of time to file the appellant's opening brief).  Robles' attorney met the deadline, filing a 52-page brief on March 4 that challenged his convictions based on the trial court's admission of evidence of his past drug dealing under Federal Rule of Evidence 404(b).  The Tenth Circuit was not persuaded and affirmed Robles' conviction in August 2011.  See Robles, 434 Fed. App'x at 741.

Three other incidents with Robles' legal mail occurred after his criminal appeal concluded.  In December 2011, officials opened a letter outside of Robles' presence that was marked "LEGAL MAIL-OPEN IN THE PRESENCE OF THE PRISONER" and addressed from "David C. Faith ATTORNEY AT LAW."  In January 2012, Robles received a piece of legal mail without any "markings" on the envelope to indicate when the letter arrived at the Facility.  And in February 2012,

4

a piece of Robles' legal mail was delivered to another inmate who opened it outside Robles' presence.

Robles filed this civil suit in November 2011. His amended complaint asserted that the interference with his mail violated his First Amendment right to communicate privately with his attorney and his constitutional right of access to the courts. He also claimed that the defendants violated his First Amendment right to petition the government for redress of grievances by "fail[ing] to address his allegations of legal mail interference and depriv[ing] him of a remedy." He named as defendants the BOP; the BOP's then acting director, Thomas Kane; The GEO Group; the warden; and several other Facility officials. The district court dismissed the complaint against the BOP and Kane because Bivens claims cannot be brought against agencies and Robles failed to allege that Kane had actual knowledge of the actions at issue in the suit. The remaining defendants moved to dismiss the complaint, and a magistrate judge issued a report and recommendation concluding that the court should dismiss Robles' complaint because he had adequate state law remedies for pursuing his claims. The district court adopted that recommendation over Robles' objections and dismissed his complaint.

## II.

We review de novo the district court's decision to dismiss a complaint for failure to state a claim, accepting the complaints allegations as true. Miller v. U.S.

5

Dep't of Agr. Farm Servs. Agency, 143 F.3d 1413, 1414–15 (11th Cir. 1998). Because Robles is a prisoner proceeding pro se, we liberally construe his pleadings.  Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).  His complaint makes three claims based on three different rights.  None states a plausible claim for relief.

First, Robles contends that the defendants violated his right of access to the courts.  To state a claim for relief, Robles had to allege, among other things, that the interference with his legal mail caused him "actual injury."  Al-Amin v. Smith, 511 F.3d 1317, 1332 (11th Cir. 2008).  Actual injury here means a tangible disadvantage to Robles in his criminal appeal, such as a missed filing deadline or a foregone claim.  See id. at 1332–33.  Neither Robles' complaint nor his briefs identify any such disadvantage.  The record shows that his attorney had months to prepare his appeal and filed a 52-page brief arguing for the reversal of his convictions.  Robles never explains what arguments would have been added to that brief if he had received the five pieces of legal mail on time.  Thus he fails to state a claim for relief based on his right of access to the courts.

Second, Robles asserts that the defendants violated his First Amendment right to petition the government for redress of grievances.  To state a claim for relief, Robles had to allege that prison officials interfered with his freedom to

6

invoke the judicial process.[5]  The right to petition is a procedural guarantee that a prisoner will have the opportunity to present his claims in court, not a substantive guarantee that the prison will take remedial action based on those claims.  See Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) ("[T]he prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance. . . .") (quotation marks omitted).  But Robles' allegation is substantive.  He accuses the defendants of "fail[ing] to address his allegations of legal mail interference and depriv[ing] him of a remedy."  Furthermore, the fact that Robles' complaints are now before this Court is proof that the Facility did not interfere with his freedom to invoke the judicial process.  See Antonelli v. Sheahan, 81 F.3d 1422, 1430–31 (7th Cir. 1996).  Robles has therefore failed to state a claim for relief based on his right to petition the government for redress of grievances.

Finally, Robles argues that the defendants violated his First Amendment right to confidential communication with his attorney.  Because the Facility is a privately run prison, Robles cannot have a viable claim for relief unless we recognize a Bivens cause of action against it.  See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66–67, 122 S.Ct. 515, 519 (2001); Alba v. Montford, 517 F.3d 1249,

---

[5] We have also held that the right to petition for redress of grievances protects prisoners from retaliation for filing administrative grievances.  See, e.g., Boxer X, 437 F.3d at 1112.  That aspect of the right is not at issue here.

7

1252–56 (11th Cir. 2008). We may do so only if: (1) there are no adequate alternative remedies under state or federal law, and (2) no "special factors" counsel against implying a cause of action here. See Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 2598 (2007). Robles' claim flounders on the first criterion. State law tort actions provide an adequate alternative remedy if they "provide roughly similar incentives for potential defendants to comply with" the constitutional right in question "while also providing roughly similar compensation to victims of violations." Minneci v. Pollard, — U.S. —, 132 S.Ct. 617, 625 (2012). Georgia tort law provides both.

We base our conclusion largely on the fact that Robles' constitutional claim would, if successful, entitle him only to nominal damages. Prisoners like Robles — who claim interference with their legal mail but no actual injury — can receive only nominal damages. See Al-Amin, 511 F.3d at 1334–35; see also Al-Amin v. Smith, 637 F.3d 1192, 1196–98 (11th Cir. 2011) (explaining that, under the Prison Litigation Reform Act, prisoners cannot receive compensatory or punitive damages in the absence of a physical injury. That sets a very low bar for Georgia tort law to provide "roughly similar incentives" and "roughly similar compensation." Minneci, — U.S. —, 132 S.Ct. at 625.

Georgia law clears that bar by providing several causes of action for prisoners like Robles. See id. at — U.S. —, 132 S.Ct. at 624 (explaining that the

8

adequate alternative remedies criterion asks whether the defendant's actions are "the kind of conduct that state tort law typically forbids").  Robles' complaint focuses on two actions by the defendants:  opening his private legal mail outside his presence and withholding his legal mail.  As for the opening of private mail, Robles can sue under Georgia common law for intrusion upon seclusion or solitude.  See Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 837 (Ga. 1991) ("The 'unreasonable intrusion' aspect of the invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns."); cf. Thomas v. Pearl, 998 F.2d 447, 452 (7th Cir. 1993) (recognizing that opening an individual's mail would qualify as an intrusion upon seclusion).  As for the withholding of mail, Robles can sue under Georgia's statutory tort for deprivation of possession.  See Ga. Code Ann. § 51-10-1 ("The owner of personalty is entitled to its possession.  Any deprivation of such possession is a tort for which an action lies."); see also Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987) (recognizing § 51-10-1 as an adequate remedy where state police officers have seized a defendant's personal property).

Both Georgia law torts are arguably better remedies than a Bivens claim would be because they would allow Robles to seek compensatory and punitive damages, as well as "apply principles of respondeat superior and thereby obtain recovery from a defendant's potentially deep-pocketed employer."  Minneci, —

9

U.S. —, 132 S.Ct. at 625.  At the least, the two Georgia law torts provide roughly similar incentives and compensation to a <u>Bivens</u> claim.  For that reason, we decline to recognize a <u>Bivens</u> cause of action under these circumstances.  Robles has therefore failed to state a claim for relief.

**AFFIRMED.**